Boynton, J.
The plaintiff in error contends that the proceedings had before Justice King terminated in a judgment discharging him from custody, he having entitled himself to such discharge by complying with the provisions of section 2 of the Bastardy Act (70 Ohio L. Ill), and that the validity of such judgment can not be inquired into or impeached collaterally; and that, it being a condition *526 precedent to the right to such discharge, that he satisfy the demands of the complainant, such judgment, until set aside is conclusive of the fairness and validity of the settlement made. In the first place, it does not appear from the transcript, contained in the record, of the proceedings had before such justice, that any order was made discharging the accused from custody, or that any judgment was rendered in the premises. Nor does it appear from the record that he was entitled to such discharge. All that appeal’s to have been done by the justice was to take the examination of the complainant in writing, make a memorandum on his docket that the parties had “ compromised,” and accept and record the bond given by the accused, conditioned to save the township free from all charges toward the maintenance of the complainant’s child. This action did not embrace all the requirements of the statute, which are precedent conditions to the right to be discharged from custody. Section 2, after requiring, among other things, an examination of the complainant, under oath and in writing, respecting the cause of her complaint, provides, that ‘-if, on such examination, the party accused shall pay, or secure to be paid to the complainant, such sum or sums of money or property as she may agree to receive in full satisfaction, and shall further give bond to the trustees of the township in which said complainant shall reside, and their successors in office, conditioned to save such township free from all charges toward the maintenance of said child, then and in that case the justice shall discharge the party accused out of custody on his paying the costs of prosecution : 'Provided, that the agreement aforesaid shall be made or acknowledged by both parties, in the presence of the justice, who shall thereupon enter a memorandum of the same upon his docket.”
It thus appears that before the accused was entitled to an order for his discharge, he must have paid or secured to be paid, the sum which the complainant agreed to receive in satisfaction of her claim upon him by reason of his being the father of her illegitimate offspring, and he must *527 have executed the required bond, paid the costs of the prosecution, and together with the complainant have made or acknowledged said agreement in the presence of the justice. It does not appear that the two last requirements were complied with. The entry by the justice that the parties compromised is not a compliance with the terms of the proviso. The agreement must be made in his presence, or its terms acknowledged before him in order that a memorandum thereof may go upon the docket as evidence of the agreement made. If, however, we go outside the record for the judgment or order securing to the accused his discharge, or, if we assume that he was discharged from the circumstance that he was not bound over, the result will be the same. -He was confessedly the father of complainant’s unborn child, and in order to avoid the consequences that attach to that relation, he devised a plan by which the complainant was to be the unsuspecting instrument of his escape from liability. Under the pretense and statement that he desired to assure her of his purpose to marry her, and to give.her written evidence of his sincerity, he prevailed upon her to accompany him to the office of a .justice of the peace and there caused the proper preliminary steps to be taken to fasten upon him the paternity of the child; and all to the end that he might secure a record, for a nominal sum, that would enable him to defy all efforts t® charge him with its maintenance and support. Assuming to hand her a written promise to marry her, he placed in her hands two promissory notes of $25 each, with the direction not to examine the same until she arrived at home. • He seems to have manipulated and managed the entire prosecution.
The reply avers—and we are to assume that its truth was established—that the complainant executed the papers, which included the alleged agreement of compromise, “in utter ignorance of their contents,” and it would seem in the full belief that the part she was acting was a necessary counterpart to defendant’s obligation to marry. One of thp papers prepared for her, and which she thus signed, was an agreement to accept the $50, evidenced by the two notes, *528 in full satisfaction of all claim upon the accused growing out of hps relation to the child; and in order that the anticipated fruits of his labor may not be lost, the court is asked to declare that the proceedings before the justice create an estoppel in his favor, and conclusively bind the complainant to such agreement, how much-soever she may have been deceived, or however fraudulent his conduct may have been.
It is not denied, if the agreement or settlement was induced by fraud, that it is voidable at the election of the complainant. But it is claimed that the fact can be established only in an action to set aside the order and judgment of the justice directly instituted for that purpose. "While we recognize the established doctrine, that a judgment of a court having jurisdiction of the person and subject matter can not be collaterally impeached by a party thereto, we are not satisfied that an order discharging the accused in a proceeding in bastardy is embraced within the class of judgments or orders protected by such rule from collateral impeachment. •
The agreement contemplated by section 2 of the Bastardy Act, is, when made, the voluntary act of the parties. The examination before the justice, where the case is not settled in the mode prescribed, is preliminary, merely, to a final trial.' The duty of the justice is, to a greater or less extent, ministerial. He takes the examination in writing, and binds the accused in a recognizance to appear at the next term of the court of common pleas. He adjudicates nothing. His duties are slightly more of a judicial nature in case of adjustment, where the parties agree on the sum the accused is to pay, or secure to be paid, toward the support and maintenance of the child. But he has no part in making the agreement, and his assent or approval is not necessary to its validity. The agreement being made, he makes a memorandum of it on his docket, accepts a bond, receives the costs, and discharges the accused. The right of the accused to be discharged depends entirely on his ability to make such agreement with the complainant, and *529 his willingness to comply with'the terms of the statute requiring a bond to the township and the payment of costs, and not at all upon the discretion or judgment of the justice. The proceedings before the justice, in our judgment, were not of such a character as to preclude the complainant from showing the fraudulent conduct of the accused in the obtaining of the alleged agreement of compromise.
The objection that the fraud could only be established in an independent action, instituted to set aside the agreement and to annul the proceedings before the justice, is untenable. The accused brought such proceedings into the case by way of answer, and claimed for them the effect of a bar to the prosecution. In reply thereto, it was proper for the complainant to show that they were fraudulent, and therefore void. Whether the practice adopted is the proper one or not, in a prosecution under the bastardy act, need not be considered, as the irregularity, if any, was introduced by the accused. It was quite admissible for the complainant to show that any agreement interposed and relied on as a bar to the prosecution, was the product of fraudulent representation.

Leave refused.